14599

BROADWAY v. JEFFERS, AND FOUR OTHER CASES

(194 S. E., 642)

*Messrs. Zeigler & Brailsford* and *Edgar A. Brown,* for appellant, cite:

*Messrs. P. F. Haigler* and *Howard A. Jenkins,* for respondents, cite:

January 7, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

These actions were instituted and prosecuted to judgment by respondents for the recovery of compensation for professional services rendered and hospitalization furnished to appellant's son, William Jeffers, an adult not residing

with appellant. The cause of action of each respondent being so connected and interwoven with the same conditions, facts, and circumstances as their basis, counsel for respondents and appellants, by mutual consent, tried the cases together.

The second and third paragraphs of the Broadway complaint are as follows:

"Second: That on the Twelfth day of July, 1935, her services as such a nurse were engaged by the Defendant, W. A. Jeffers, for his son, William Jeffers, who was then a patient at the Summerville Infirmary, located at or near the Town of Summerville, in the County of Dorchester, in the State aforesaid at a per diem basis of Five Dollars ($5.00), such employment being for special night duty.

"Third: That continuously thereafter, and up to and including the Twenty-second day of August, 1935,—a period of Forty-two days,—she rendered such professional services to the said William Jeffers at the request, and with the sanction and approval, of the said Defendant, W. A. Jeffers."

The second paragraph of the Tupper complaint is as follows: "Second: That, on the Twelfth day of July, 1935, his services, as such physician and surgeon, were engaged by the said Defendant, W. A. Jeffers, for his son, William Jeffers, who was then a patient at the Summerville Infirmary, located at or near the Town of Summerville, aforesaid, and who was suffering from a gunshot wound in the chest and abdominal cavity, which necessitated an immediate major operation; that as such physician and surgeon, this Plaintiff, then and there, performed the services, so contracted for, with very satisfactory results, and thereafter continued in daily attendance on the said patient, the said William Jeffers, with the consent, sanction and approval of the said Defendant, W. A. Jeffers, through the 30th day of August, 1935, at which time the said patient was dismissed by this Plaintiff."

The second paragraph of the Miles complaint is as follows: "Second: That, on the Twelfth day of July, 1935, his

services as assistant to Dr. Elias D. Tupper, the physician and surgeon in charge, were engaged by the said Defendant, W. A. Jeffers, for his son, William Jeffers, who was then a patient at the Summerville Infirmary, located at or near the Town of Summerville, aforesaid, and who was suffering from a gunshot wound in the chest and abdominal cavity, which necessitated an immediate major operation; that such services were rendered; that thereafter and while the said William Jeffers was a patient at the said Infirmary this Plaintiff rendered other professional services to the said William Jeffers, at the request, and with the consent, sanction and approval of the said Defendant, W. A. Jeffers."

The second and third paragraphs of the Sweet complaint are as follows:

"Second: That she is informed and believes that on the Thirteenth day of July, 1935, her services as such a nurse were engaged by the Defendant, W. A. Jeffers, for his son, William Jeffers, who was then a patient at the Summerville Infirmary, located at or near the Town of Summerville, in the County of Dorchester, in the State aforesaid at a per diem basis of Five Dollars ($5.00), such employment being for special day duty.

"Third: That continuously thereafter, and up to and including the Twenty-Sixth day of July, 1935,—a period of Fourteen days,—she rendered such professional services to the said William Jeffers at the request, and with the sanction and approval, of the said Defendant, W. A. Jeffers."

The second and third paragraphs of the Infirmary complaint are as follows:

•"Second: That on the Twelfth Day of July, 1936, (1935?) one William Jeffers, who was suffering from a gunshot wound in the chest and abdominal cavity, was admitted, as a patient, to the said Infirmary at the request and direction of his father, the Defendant, W. A. Jeffers.

"Third: That the said Defendant, W. A. Jeffers, authorized, and agreed to pay, all charges and expenses of the said

patient, William Jeffers, during the time that he was in the said Infirmary."

The appellant, W. A. Jeffers, the father of William Jeffers, by his answer denied liability in all cases on the ground that he had made no contract to pay for the services rendered to his son.

After the testimony was in, appellant made a motion to direct a verdict in his favor "as to all of the causes of action, upon the ground that the only reasonable inference that can be drawn by the jury from this testimony is that there was no contract made by the defendant under which he intended to assume a legal obligation and pay the claims of the young man mentioned in this complaint."

The motion was overruled and the trial Judge submitted the cases to the jury, who found verdicts in each of the cases against appellant. The appellant then made a motion for a new trial upon the ground that the testimony did not warrant the verdicts. This motion was also overruled.

In appellant's printed brief, six "Questions" are stated as being raised by this appeal; but the record does not disclose so many. And it does not appear from the record, as we read it, that some of the "Questions," as stated by appellant, are warranted. We, therefore, confine this opinion to a discussion of the errors complained of by the exceptions.

The first exception alleges error in the refusal of appellant's motion for a directed verdict upon the ground that no reasonable inference could be drawn from the testimony that appellant intended to enter into a contract, or to assume the legal obligation, to pay the bills sought to be collected from him.

As a general rule, a request by a parent to a surgeon or physician to attend an adult child does not create an implied contract to pay for the services rendered by the physician or surgeon. However, this is not a rule of invariable application, for the conditions and circumstances surrounding the parties at the time the request is made, as

well as the utterances on the subject, must be taken into consideration, and if, under the facts and circumstances, the physician or surgeon is justified in believing and relying on the parent's intention to pay for the services rendered although there is no express promise to pay therefor, an implied contract is created, making the parent liable for the reasonable value of the services rendered. Of course, if there is nothing in the facts and circumstances suggesting to the physician or surgeon that the parent intends to assume the legal obligation to pay, at the time the request for services is made, the parent is no more legally liable for services rendered to his adult child, living away from his home, than he would be for services requested to be rendered to a total stranger.

In 48 C. J., at page 1164, under services to adult child or married daughter, it is said: "A request by a parent to a physician to attend a child who is of age, or his or her acquiescence in the physician's attendance upon such child, does not raise an implied promise on part of the parent to pay for the physician's services, although the child is ill at the home of the parent. Similarly, a physician who at the importunity of a mother treats her married daughter, who is living with her husband, first insisting on the husband's consent, cannot recover from the mother as on an implied promise to pay for his services. But the circumstances may be such as to show an intention, on the part of a parent requesting or acquiescing in the services of a physician to his adult child, to be liable therefor, and a reliance on such intention by the physician, in which case the parent is liable."

In 21 R. C. L., page 413, under the discussion of recovery from person requesting attendance, we find: " * * * Medical service requested by one person in behalf of another and furnished to that other often gives rise to a contract implied in fact between the physician and the person requesting the service. Whether the person requesting the service undertakes to pay for it, and, so, is liable on general contract principles is a question of fact which must be set-

tled by the jury. For example, although a promise to pay a physician for his services is not implied from the mere fact that a father calls him to attend his sick son, who is a man of mature age, yet, if the circumstances or conditions are such as to lead the physician to believe that the father is undertaking to pay for the services to be rendered and to charge the father with the knowledge thereof, he is liable under an implied contract."

In the discussion of the exception now under consideration, we in effect also pass upon appellant's Exception No. 3, because it becomes necessary to settle if these actions are based on implied or express contracts, upon which theory were the cases tried in the Circuit Court.

That the allegations of a complaint are to be liberally construed in favor of the pleader is such an elementary and well-established rule of the law of pleadings in this State, that citation of authority is unnecessary. While these complaints are not expressed in as apt words to support a cause of action on implied contract as we think they might have been, yet, under the liberal construction rule, they are reasonably susceptible of being construed as actions based on a contract implied in fact.

It is true that the word engaged is used in the complaints of all respondents, except the Summerville Infirmary; but the word engaged does not necessarily mean that an express contract has been formed. If one requests the performance of work of another and the person to whom the request is made performs the work, have not the services of the person complying with the request been engaged? From the request and a compliance therewith on the part of the party requested to perform work, although there is no express promise to pay therefor, the law implies a legal obligation to pay the reasonable value of the services, unless a contrary intention of the parties is disclosed.

In Williston on Contracts, Vol. 1, at page 54, in Section 36, it is stated: "An offer need not be stated in words. Any conduct from which a reasonable person in the offeree's

position would be justified in inferring a promise in return for a requested act or a requested promise by the offeree, amounts to an offer. The common illustration of this principle is where performance of work or services is requested. If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of the work. * * * "

The allegations of the complaints show a request by appellant for services to be rendered to his son and performance on the part of the persons requested to perform the services. If appellant entertained any doubt as to whether the complaints stated causes of action on express or implied contract, he could and should have by motion required respondents to elect on which cause of action they would proceed. Having failed to preserve his rights in the Circuit Court by motion to elect, relief cannot be granted by this Court.

In the case of *Wilkins v. Howe Grain & Mercantile Co.*, 111 S. C., 82, 96 S. E., 678, 679, Mr. Chief Justice Gary, speaking for the Court, said:

"The allegations of the complaint, that the plaintiff and the defendant entered into the contract therein described, and that the defendant committed a breach thereof, from which the plaintiff sustained damage, were, in themselves, sufficient to constitute a cause of action arising *ex contractu.*

"There are allegations, also, not only appropriate to an action for damages arising *ex contractu,* but to the effect that the breach of contract was accompanied by a fraudulent act.

"The allegations are also appropriate to an action of tort, committed with a fraudulent intent.

"The defendant did not make a motion to require the plaintiffs to make the complaint definite and certain, or to elect upon which cause of action they would proceed to trial.

"Under such circumstances, this Court will not undertake to say what particular cause of action the plaintiffs have attempted to set forth, and to which they should be confined, in determining the sufficiency of the complaint. *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann Cas., 407."

A brief statement of the facts and circumstances disclosed by the testimony follows:

On July 12, 1935, at St. George, S. C., William Jeffers, appellant's son, was seriously and critically wounded by a deputy sheriff of Dorchester County and was immediately carried to the Summerville Infirmary for medical and surgical treatment. William Jeffers arrived at the Infirmary at 7:00 o'clock p. m. of said date, and upon physical examination by Dr. Elias Tupper, one of the respondents, and the Infirmary's chief surgeon, it was determined that the wounded man had suffered a serious abdominal wound; a pistol ball having entered the left chest, ranged downward, split the large intestine in two places, and buried itself in the pelvis of his body. The patient was suffering from great shock, which made it necessary to administer stimulants before the necessary surgical operation could be performed.

With reasonable dispatch, appellant was advised of his wounded son's condition and arrived at the Infirmary about 10:00 o'clock p. m. of said date. Upon appellant's arrival at the Infirmary, he inquired of Dr. Elias Tupper as to who expected to operate on his son, and was advised by Dr. Tupper that he expected to operate unless appellant desired the services of some other surgeon; that in the event appellant wished to have some other surgeon perform the necessary surgical operation, an ambulance would be called to take appellant's son to another hospital, and that he and the attachés of the Summerville Infirmary would stand by ready and willing to do all they could to alleviate the suffer-

ing of appellant's son until the services of any surgeon appellant preferred could be procured. Appellant mentioned two other doctors, but after conferring with another of his sons, and with the sheriff of Dorchester County, advised Dr. Tupper to perform the operation, and to do all that he could for his son. Dr. Tupper testified that appellant told him not to "spare any expense"; but this statement is denied by appellant.

It is undisputed that this was a major operation and that the wounded man was in a serious condition. Dr. Tupper stated that he thought that appellant's son should have a special night nurse, and so advised appellant; that appellant told him to get one and at that time reiterated the statement to spare no expense. Miss Burnette Broadway, a respondent herein, was called as the night nurse, and Miss Ruth Sweet, also a respondent herein, was called as the day nurse. Dr. Louis Miles, another respondent herein, assisted Dr. Tupper in performing the operation; a major operation requiring an assisting surgeon.

The respondent, Miss Burnette Broadway, whose testimony was taken by deposition, stated that she presented her bill and that of the respondent, Miss Ruth Sweet, to appellant, who, at that time, stated: "I am going to pay the hospital and doctor's bill when my son recovers but you and Miss Sweet will have to wait until completion of your services and I will take care of all those together."

As heretofore shown, a parent is not liable for professional services rendered to an adult child at his request in the absence of express contract or unless the circumstances and conditions are such as to indicate an intention on the part of the parent to be responsible therefor.

There is no express contract disclosed by the testimony in the case at bar, and if appellant is to be held legally responsible for services rendered to his son, William Jeffers, by respondents, such liability must of necessity be created by an implied contract; therefore it is necessary that we take into consideration the facts of this case bearing con-

stantly in mind the requirements of the law for the establishment of an implied contract in such cases.

When appellant arrived at the Summerville Infirmary, he was advised that he could employ any surgeon he preferred to perform the necessary surgical operation, or an ambulance would be called to carry his son to another hospital. Thereupon, appellant advised Dr. Tupper that he wished to have him perform the operation; that he would like to have them do everything possible for his wounded son and to spare no expense.

We must not be unmindful of the relationship of appellant and the wounded man. If the statements made by appellant had related to a stranger or a mere acquaintance, we do not think that any liability would have been established by the evidence; but such is not true of the case at bar. Here we have a father, upon being advised of his wounded son's condition, coming a long distance after night and upon finding his own flesh and blood upon the verge of expiration, asks about other doctors and surgeons, and then, after conferring with other persons present, advises Dr. Tupper to proceed with the operation and to spare no expense.

In the case of *Morrell v. Lawrence*, 203 Mo., 363, 101 S. W., 571, 572, 120 Am. St. Rep., 660, 662, 663, 11 Ann. Cas., 650, the Court said:

"In their brief the learned counsel quote the law as laid down in Wood on Master and Servant, 2d Ed. § 70: 'The rule is that, in order to render one liable for services rendered at his request, they must be rendered for his benefit, or under such circumstances that the person requested to render them was justified in understanding that they were for his benefit or upon his credit. But if the person performing the services knows they are not for the benefit of the person making the request, and that he is under no legal obligation to pay therefor, he cannot predicate a claim against him, unless he expressly promised to pay for them before the services were rendered.'

"That is a correct statement of the general rule of law on that subject, but it is not of invariable application. We see no objection to applying it to the case of one calling a physician to a suffering stranger, when there is nothing in the situation to suggest to the physician that the man calling him has any deeper interest in the case than the prompting of common humanity; and we see no objection to applying the rule to the case of a father calling a physician to wait on his son, if the son is of age and living to himself, and if there is nothing in the conditions to indicate that the father is taking upon himself anything more than the office of messenger for his son. But there is something more than the dictates of common humanity between father and son, and the fact of that relationship is to be considered in connection with other circumstances, if there are other circumstances, indicating to the physician that the father calls him on his own account to serve his son."

Appellant further contends that he is not liable for services rendered by the respondent, Miss Ruth Sweet, because the agency of Dr. Tupper to employ her was only proved by his declaration, which was insufficient to establish agency. It is true that the declarations of an agent alone as to his agency are insufficient to prove agency; but it is also well established that if there are other corroborating facts and circumstances disclosed by the testimony, agency then becomes a question for the jury. *General Motors Acceptance Corporation v. Chestnut, Sheriff, et al.,* 158 S. C., 42, 155 S. E., 231; *Meehan v. Commercial Casualty Insurance Co.,* 166 S. C., 496, 165 S. E., 194.

There was more than one reasonable inference to be drawn from the testimony; therefore, we find no error in the submission of the issues to the jury, and the exception thereabout is overruled.

Appellant takes the position in this Court that the trial Judge in effect charged the jury that respondents (plaintiffs below) could recover on the theory of either an express or implied contract.

As we view the charge of the Circuit Judge, it is not subject to the interpretation contended for by appellant. An express contract is not mentioned by the Circuit Judge at any point in his charge. Indeed, the transcript discloses that the cases were tried on the theory of implied contract, and express contract is not by the slightest implication referred to by the transcript of record. The question of express contract is raised for the first time in this Court.

The Circuit Judge instructed the jury that there was such a thing as an implied contract, and gave the jury the following illustration: "For instance, suppose you go to a lawyer's office, and, without saying anything about the price, get him to take a case for you, or prepare some legal document, that is what is known as an implied contract and the law says that you will have to pay him a reasonable fee for his services."

We find no error in the charge in this respect, and the exception thereabout is overruled.

It would be unfair to the trial Judge, at this stage of the proceedings, to treat the cases as having been brought and tried on the theory of express contract when no mention throughout the trial was made as to whether the respondents relied upon an express contract or an implied contract, and when they were not required to elect; and we know that the eminent counsel for appellant desire to be entirely fair to the trial Judge.

Exception is taken to that portion of the charge of the presiding Judge wherein he stated, "The heart of the complaints of each one of these plaintiffs, for example, Miss Sweet, is contained in the third paragraph of the complaint"; it being the contention of appellant that the heart of this complaint was found in the second paragraph.

We have hereinbefore set out both the second and third paragraphs of the Sweet complaint. The third paragraph alleges that at the request, and with the sanction and approval of appellant, she rendered professional services to William Jeffers. This paragraph, when read in connection with the

preceding paragraphs of the complaint, is in fact the heart of the action if based on an implied contract. Further than this, it must be remembered that the trial Judge was charging the jury as to five complainants, and that appellant also had the complaints before him and had notice of the allegations contained in the paragraphs of each, and it was the duty of counsel to call the attention of the Judge to any incorrect statement of the contents of the pleadings or any particular paragraph therein, if it was conceived that the jury would be misled thereby. In the case of *Lumpkin v. Mankin,* 136 S. C., 506, 134 S. E., 503, 504, Mr. Justice (afterward Chief Justice) Blease, writing the opinion of the Court, said: "In *State v. Ballew,* 83 S. C., 82, 63 S. E., 688, 64 S. E., 1019, 18 Ann. Cas., 569, it was held that, generally, a party cannot take his chances of a successful issue, reserving vices in the trial, of which he has notice, for use in case of disappointment in the result."

What has heretofore been said disposes of the remaining exception alleging error in the refusal of the trial Judge to grant the motion of appellant for a new trial.

All exceptions are overruled, and the judgments affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.