.0790

Floyd I. HARPER, Respondent v. O. A. ETHRIDGE and George H. Fann, Appellants.

(348 S. E. (2d) 374)

Court of Appeals

*Wilburn Brewer, Jr.*, and *Paul A. Dominick*, of *Nexsen, Pruet, Jacobs & Pollard*, Columbia, *for appellants.*

*T. English McCutchen, III*, and *Evans Taylor Barnette*, of *Whaley, McCutchen, Blanton & Rhodes*, Columbia, *for respondent.*

Heard May 20, 1986.

Decided Sept. 2, 1986.

BELL, Judge:

This is an action arising from a partnership agreement. Floyd I. Harper, one of the partners, sued O. A. Ethridge and George H. Fann, two other partners, alleging three causes of action. The first cause of action alleges breach of fiduciary duty and seeks recovery of a one-third partnership interest in certain real property and contract rights of the partnership. The second cause of action alleges Harper was

wrongfully excluded from the partnership and seeks damages for breach of contract accompanied by a fraudulent act. The third cause of action seeks an equitable accounting among the partners. Ethridge and Fann demurred to the complaint and also made motions to elect and to make more definite and certain. The circuit court overruled the demurrers and denied the motion to require an election between causes of action. The court granted the motion to make more definite and certain as to the second cause of action. Ethridge and Fann appeal. We affirm.

The following facts are established by the well pleaded allegations of the complaint.

Harper was a member of HLH general partnership, formed for the purpose of developing a convention center and commercial complex along the Congaree River in Lexington County. In July 1982, the partnership entered into an option contract with Mount Vernon Mills for the purchase of 15.135 acres of land located along the river. When the partners were unable to obtain financing to complete the purchase of the property, they invited Ethridge to join the partnership in order to provide it with additional financial strength. Ethridge, fully aware of the financial condition of the partnership, agreed to become a partner and thereafter advanced $100,000 to the partnership. Mount Vernon Mills then extended the option period until December 31, 1982, for an additional $10,800 consideration.

On December 23, 1982, Harper and the other partners entered an agreement with Fann whereby Fann purchased the partnership interest of one of the other partners. This agreement also provided that Harper, acting as a partner, would assign the contract on the Mount Vernon Mills property to Ethridge and Fann individually. Ethridge and Fann would then negotiate a purchase money loan, purchase the property, and hold it in trust for the partnership. During the term of the loan, Harper, as a partner, would pay his proportionate share of real estate taxes and interest. When the property was sold, Harper would pay his proportionate share of the loan balance to retire the loan. If Harper failed to pay his proportionate share he would forfeit his interest in the partnership.

The agreement contemplated that the partners would seek

a developer to purchase the land from the partnership. The partners would then use the proceeds of the sale to retire the loan and recover their out of pocket expenses with any profits from the transaction to be divided among the partners. The agreement provided:

> should any partner present to HLH a reasonable development plan that would benefit all parties and O. A. Ethridge and George H. Fann withhold approval so as to jeopardize the interests of the other partners, the default provisions of this Agreement shall be suspended until the matter shall be expeditiously arbitrated. . . .

Pursuant to the agreement, Ethridge and Fann obtained a loan and purchased the property in their own names in trust for the partnership. During 1983, Lafayette Columbia, Inc. presented a proposal for development of the property including drawings, studies, designs, plans, and financing. Ethridge and Fann entered into an option contract with Lafayette for which the latter paid a total of $91,000. This payment was applied to reduce principal and interest on the purchase money loan. Harper, on behalf of the partnership, also negotiated an agreement to purchase the property with certain British interests represented by one Dennis Bull. Ethridge refused to accept the arrangement. Either the agreement with Lafayette or with Bull would have enabled HLH to retire all outstanding debts of the partnership and recover all out of pocket expenses of the partners.

Until December 15, 1983, Harper believed there was a firm contract with Lafayette for purchase of the land. However, Lafayette never consummated the purchase. When the purchase money loan came due on December 30, 1983, Ethridge and Fann, knowing that Harper and the other partners would be unable to obtain alternate financing, refused to renew or extend the note. Instead, they declared Harper in default under the agreement and invoked the forfeiture clause to oust Harper and the other partners from the partnership. They had previously refused Harper's demand for arbitration of the Bull proposal. Thereafter, Ethridge and Fann entered a contract with British interests represented by Dennis Bull. This agreement was based on a development plan similar to the one Harper had negotiated

with Bull and used the same drawings, studies, designs, plans, and financing as had been contemplated in the agreement between HLH and Lafayette.

## I.

Ethridge and Fann demurred to the complaint on two grounds: (a) there is a misjoinder of causes of action because the first and third causes of action are inconsistent with and mutually exclusive of the second cause of action; and (b) the second cause of action fails to state facts sufficient to constitute a claim for breach of contract accompanied by a fraudulent act because it fails to allege all the elements of common law deceit.

## A.

Under Section 15-13-320(5), Code of Laws of South Carolina, 1976, which was in effect at the time this case was decided by the circuit court, a defendant was permitted to demur to the complaint when it appeared on the face thereof that several causes of action had been improperly united. Causes of action based on inconsistent facts, inconsistent and mutually exclusive legal theories, or inconsistent remedies, could not be joined. *McMahan v. McMahon*, 122, S. C. 336, 115 S. E. 293 (1922); *Tzouvelekas v. Tzouvelekas*, 206 S. C. 90, 33 S. E. (2d) 73 (1945); *Thompson v. Watts*, 281 S. C. 504, 316 S. E. (2d) 393 (1984). Thus, a cause of action based on affirmance of a transaction could not be joined with a cause of action based on disaffirmance of the same transaction. *Thompson v. Watts, supra.*

In this case, Ethridge and Fann argue that Harper's first and third causes of action are predicated on the assumption that Harper is a member of the partnership entitled to a partner's equitable remedies. In other words, these causes of action affirm the partnership agreement. On the other hand, the second cause of action is predicated on the assumption that Harper has been excluded from the partnership and no longer has an interest in partnership assets. In other words, the second cause of action disaffirms the partnership agreement. Thus, Ethridge and Fann contend, the causes of action are inconsistent and have been improperly united in a single complaint.

During the pendency of this appeal, the statute on which Ethridge and Fann base the demurrer was repealed. *See* Section 2, Act No. 100, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1985, 64 Stat. at Large 277, 279. Under the new rules of civil procedure which replace the statute, a plaintiff may join as alternate claims as many claims, legal or equitable, as he has against the opposing party, even if the claims are inconsistent. *See* Rules 8, 18, S.C.R. Civ. P. (1985); *In re King Enterprises*, 678 F. (2d) 73 (8th Cir. 1982); *United States v. Ziomek*, 191 F. (2d) 818 (8th Cir. 1951); *see also, American Equity Life Insurance Co. v. Miller*, 248 S. C. 107, 149 S. E. (2d) 331 (1966); *Tzouvelekas v. Tzouvelekas, supra.*

For the reasons stated in *McGann v. Mungo*, 287 S. C. 558, 340 S. E. (2d) 154 (Ct. App. 1986), we hold that the repeal of Code Section 15-13-320(5) operates to deprive Ethridge and Fann of the defense that inconsistent causes of action have been improperly united in the complaint. Under the new rules of civil procedure, which now govern all further proceedings in this suit,[1] inconsistent causes of action may be joined. Accordingly, we affirm the overruling of the first ground of the demurrer.

B.

Ethridge and Fann also demurred to the second cause of action on the ground that it failed to state facts sufficient to constitute a cause of action. *See* Section 15-13-320(6), Code of Laws of South Carolina, 1976 (repealed). Because the procedural statute on which Ethridge and Fann rely has been repealed, we elect to treat the demurrer as a motion to dismiss pursuant to Rule 12(b)(6), S.C.R. Civ. P. (1985).

In essence, Ethridge and Fann claim the second cause of action fails to state a claim for breach of contract accompanied by a fraudulent act because it fails to allege the nine elements of common law fraud and deceit.

The action for breach of contract accompanied by a fraudulent act is not based on the same elements as the action in tort for fraud and deceit. *McCullough v. The American Workmen*, 200 S. C. 84, 20 S. E. (2d) 640

---

[1] *See* Rule 86, S.C.R. Civ. P. (1985).

(1942). In order to state a claim for breach of contract accompanied by a fraudulent act, the plaintiff must plead facts establishing three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S. C. 51, 336 S. E. (2d) 502 (Ct. App. 1985). It is not necessary to allege the elements of common law fraud and deceit. *See Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232 (1904); *Sullivan v. Calhoun*, 117 S. C. 137, 108 S. E. 189 (1921). The fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design. *Id.* As the Court observed in *Sullivan v. Calhoun*, "fraud," in this sense,

> assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence.

*Id.*, 117 S. C. at 139, 108 S. E. at 189.

In this second cause of action, Harper has not only alleged a breach of the partnership agreement, but also has alleged facts establishing that the breach was committed with fraudulent intent and was accompanied by fraudulent acts. The complaint alleges a dishonest design by Ethridge and Fann to oust the other partners so as to secure partnership assets and properties solely for themselves. Conduct evidencing this fraudulent intent includes the dishonest refusal to renew or extend the note, the dishonest refusal to consent to reasonable development offers made by third parties, and the dishonest refusal to arbitrate the third party offers. The complaint also details accompanying fraudulent acts, including wrongful appropriation of trust property and a wrongful appropriation of a partnership opportunity to sell the property. These allegations are plainly sufficient to state a claim for breach of contract accompanied by a fraudulent act. Therefore, we affirm the overruling of the demurrer on this ground.

## II.

Ethridge and Fann also appeal the denial of their motion to require an election between the second cause of action and the first and third causes of action. They assert that the second cause of action is inconsistent with and repugnant to the others, that it will require different proof at trial, that it requires a different mode of trial (i.e., trial by jury), and that Harper is not entitled to more than one remedy on his causes of action. Hence, they argue, an election should be required.

Harper concedes that the remedies he seeks are alternative and that he may not recover more than once. However, he argues that because of uncertainty as to which cause of action the evidence may establish, he should be permitted to plead and prove all claims without making an election.

As we view the matter, the issue raised is one of ■ election of remedies, not election between causes of action. *Cf., Boardman v. Lovett Enterprises, Inc.*, 283 S. C. 425, 323 S. E. (2d) 784 (Ct. App. 1984), *rev'd on other grounds*, 287 S. C. 303, 338 S. E. (2d) 323 (1985). Election of remedies involves a choice between two or more different and coexisting modes of procedure or forms of relief afforded by law for the same injury. *Save Charleston Foundation v. Murray*, 286 S. C. 170, 333 S. E. (2d) 60 (Ct. App. 1985). Stated another way, "[e]lection of remedies is the act of choosing between different remedies allowed by law *on the same state of facts."* *Boardman v. Lovett Enterprises, Inc.*, *supra*, 283 S. C. at 428, 323 S. E. (2d) at 785, quoting *Barfield v. J. L. Coker & Co.*, 73 S. C. 181, 189, 53 S. E. 170, 173 (1906).

In determining whether a plaintiff must elect between remedies prior to trial, our law has traditionally focused on inconsistency of causes of action as a basis for requiring election. Causes were inconsistent so as to precluded their joinder in the same complaint, where to assert one was necessarily to negative the other; or to prove one was to destroy the other, as where one cause of action was an affirmance, and the other was a disaffirmance of contract. *Tzouvelekas v. Tzouvelekas, supra.* Where the causes of action were inconsistent, the plaintiff might be required to elect prior to trial, if the complaint stated distinct causes

which were so repugnant that the assertion of one necessarily constituted an election and precluded the assertion of the other. However, in cases where the complaint stated different causes of action, but only one recovery was sought, and the causes of action were so stated because of an uncertainty as to which the evidence might establish or on which it might appear that plaintiff was entitled to recover, no election was required. *H. G. Hall Construction Co. v. J.E.P. Enterprises*, 283 S. C. 196, 321 S. E. (2d) 267 (Ct. App. 1984).

The new rules of civil procedure have abolished the restriction on pleading inconsistent causes of action. Hence, a plaintiff is no longer required to elect his remedies at the pleading stage simply because his causes of action are inconsistent.[2] Since the basic purpose of election of remedies is to prevent double recovery for a single wrong, application of the doctrine should normally be confined to cases where double compensation of the plaintiff is threatened. *Save Charleston Foundation v. Murray, supra.*

In many instances, this means the case can go to the jury on all causes of action supported by the evidence at trial, with election required after verdict but before judgment is entered. *See e.g., Nichols v. State Farm Mutual Automobile Insurance Co.*, 279 S. C. 336, 306 S. E. (2d) 616 (1983) (circuit judge allowed case to go to jury on two causes of action but after verdict entered judgment on only one cause of action to prevent double recovery). When the facts entitle a party to alternative remedies, those remedies are not considered inconsistent, and he may plead and prove his entitlement to both. *McMahan v. McMahon, supra.* As we have previously observed, "This rule rests on the principle that the plaintiff should have a full opportunity to prove his claim to some form of relief, but he should not receive a double recovery," *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 279 S. C. 468, 473, 309 S. E. (2d) 763, 766 (Ct. App. 1983).

---

[2] The plaintiff may be precluded by estoppel in pais from asserting a cause of action inconsistent with a position he took prior to litigation, if the defendant has detrimentally changed his position in reliance thereon. *General Motors Acceptance Corp. v. Herlong*, 248 S. C. 55, 149 S. E. (2d) 51 (1966). This is a rule of estoppel, however, not a question of election of remedies.

In some cases, however, the demands of fairness and orderly adjudication may require an election at an earlier stage of the proceedings. Thus, where the plaintiff has asserted only one primary wrong entitling him to a single recovery, and the different causes of action require different modes of trial, or they involve substantially different proof, so that the defendant would be prejudiced or unfairly burdened by having to defend more than one cause of action, the court may, as a matter of discretion, require an election of remedies prior to trial. *See, e.g., Scott v. McIntosh*, 167 S. C. 372, 166 S. E. 345 (1932). Accordingly, where the complaint joins legal and equitable causes of action requiring different modes of trial and involving substantially different remedies and proof of damages, our courts have generally required an election prior to trial. *See Landvest Associates v. Owens*, 276 S. C. 22, 274 S. E. (2d) 433 (1981); *Jacobson v. Yaschik*, 249 S. C. 577, 155 S. E. (2d) 601 (1967); *Boardman v. Lovett Enterprises, Inc., supra.*

There may also be situations where a party has legitimate doubt as to which of his several remedies is the right one to pursue. If the doubt cannot be reasonably resolved by discovery alone, the trial judge may wait until the close of the case when all the proof is in before requiring him to elect his remedy. *Wills v. Regan*, 58 Wis. (2d) 328, 206 N. W. (2d) 398 (1973). Election at this point rather than after verdict will be particularly appropriate if the plaintiff is asserting inconsistent causes of action and the nature or complexity of the evidence is such that jury confusion in determining liability or in measuring damages is likely to result.[3]

At what point in the proceedings an election must be made should be determined by the trial judge in light of the records as it develops. *Vitale v. Coyne Realty*, 66 A. D. (2d) 562, 414 N.Y.S. (2d) 388 (1979). The decision as to the time of election rests within the sound discretion of the trial judge as part of this general supervisory authority over the conduct of litigation. *Wills v. Regan, supra.*

In this case, Ethridge and Fann have pleaded both

---

[3] Where there are multiple causes of action, one or more of them may also, of course, be withdrawn from the jury's consideration by the granting of a motion for a nonsuit or a directed verdict at trial.

legal and equitable causes of action. The legal cause of action — breach of contract accompanied by a fraudulent act—seeks both actual and punitive damages. The equitable causes of action seek an accounting between partners and the award of a one third interest in real property and other assets of the partnership. Because of the difference in these remedies, the proof of damages involves significantly different evidence. Much of the accounting evidence would not be relevant to measuring damages for breach of contract; the evidence on punitive damages would be irrelevant to the equitable claims.[4] The equitable causes of action assume Harper is a member of the partnership. The legal cause of action rests on the theory that he has been wrongfully excluded from the partnership and is no longer a partner. Finally, the legal claim in triable by a jury. The equitable claims are typically referred to the master in equity for trial without a jury.

In these circumstances, it is reasonable to require Harper to make an election of remedies prior to trial. The facts alleged in the complaint show that one primary wrong is involved entitling the plaintiffs to a single recovery. This much is conceded by Harper himself. The burden of defending different claims involving substantially different proof, the requirement of different modes of trial, and the potential for jury confusion regarding evidence of damages if the legal and equitable claims are tried together, all suggest that fairness and orderly adjudication will be better served by requiring an election.

On the other hand, there is legitimate uncertainty at this stage of the proceedings as to which cause of action the evidence may establish, or on which it may appear the plaintiff is entitled to recover. To require an election of the pleading stage would deprive Harper of reasonable discovery and a full opportunity to prove his claim to some form of relief. For this reason, we hold the circuit judge properly denied the motion to require an election at the pleading stage and we affirm his ruling. Our decision is without prejudice to the right of the defendants to renew

---

[4] Punitive damages are not available in equity. *Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232 (1904).

their motion to require an election after the close of discovery. At that time, Harper will have had a full opportunity to develop the evidence and the circuit judge will be in a better position to determine whether a pretrial election is warranted.

Affirmed.

SANDERS, C. J., and SHAW, J., concur.