THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT 
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
Paul Keller,       
Appellant,
 
 
 
 

v.

 
 
 
 
RDLPW, Inc. and Leon Galloway,       
Respondents,
 
 
 
 

v.

 
 
 
 
Robert Harrell,       
Third-Party Defendant.
 
 
 
 

Appeal From Spartanburg County
Larry R. Patterson, Circuit Court Judge

Unpublished Opinion No. 2005-UP-236
Heard February 7, 2005  Filed April 6, 2005   

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

 
 
 
William R. McKibbon, III. and John D. Watts, both of Greenville, for Appellant.
James Howarth Ritchie, Jr. and Scott F. Talley, both of Spartanburg, for Respondents.
 
 
 

PER CURIAM:  Paul Keller appeals the trial courts decision granting a directed verdict on his causes of action for breach of contract, breach of contract accompanied by a fraudulent act, specific performance, quantum meruit, breach of the covenant of good faith and fair dealing, promissory estoppel, and fraud.  We affirm in part, reverse in part, and remand.
FACTS
Keller entered into an agreement with Robert Harrell whereby Keller agreed to purchase Harrells twenty-five and one-half percent interest in RDLPW corporation, the owner of a gym called Boiling Springs Club.  To secure the payment of all, or a portion of the purchase price, Keller executed a promissory note to Harrell.  RDLPWs attorney drafted the agreement for the sale of stock and minutes of consent regarding the proposed transaction.  Although the minutes of consent required the consent of all the shareholders, only two of the five shareholders (Harrell and David Gillespie) signed the instrument.  The remaining shareholders were Leon Galloway, Phil Holden, and Wayne
Truesdale.  
In January 2000, Keller accompanied Gillespie to a RDLPW shareholders meeting where Keller was introduced to Galloway, Holden, and Truesdale.  At the meeting, the group discussed the proposed transfer of Harrells stock to Keller and Kellers potential role in the business.  The parties discussed Keller implementing a personal training program, working to cut costs in the operation of the gym, and organizing the books of the corporation.  Following these discussions, Keller asserts the shareholders voted unanimously in favor of approving the sale and transfer of Harrells stock to him,[1] paying him $2,000 per month for his consulting services, and paying him twenty-five percent of all revenue derived from the personal training program he was to develop.  
Keller testified he devoted approximately fifteen to thirty hours per week to the operation of Boiling Springs Club.  He reduced costs at the facility and implemented a personal training program that he estimated generated approximately $4,000 per month.  Keller testified he provided his services in reliance on the shareholders promise he would be compensated.  In fact, Keller only received one check from the corporation in the amount of $2,000 for his services.  
At an August 2000 shareholders meeting, Keller testified he requested the three remaining shareholders sign the minutes of consent previously signed by Harrell and Gillespie, which would accomplish the transfer of Harrells shares to him.  However, the shareholders refused to sign the agreement at that time.  
Several weeks later, Keller learned Galloway had purchased Harrells shares and transferred them to his son, Jeff.  Holden and Truesdale were at some point voted out of RDLPW, so the only remaining shareholders were Galloway and his son, Jeff.  Subsequently, Galloway gave Holden and Truesdale stock that entitled them to a greater ownership interest in RDLPW than they previously enjoyed.  The corporations financial records indicate the Boiling Springs Club was operating at a loss at the end of August 2000.  
Keller brought this action against RDLPW and Galloway in November 2000, alleging causes of action for breach of contract, breach of contract accompanied by a fraudulent act, specific performance, quantum meruit, breach of the covenant of good faith and fair dealing, promissory estoppel, and fraud.  RDLPW answered and filed a third-party complaint against Harrell, denying liability and alleging any liability should lie solely with Harrell.  Harrell did not answer the cross-complaint and was held in default.  The parties tried the matter before a jury.  After Keller presented his evidence, both RDLPW and Galloway moved for a directed verdict on all causes of action.  The trial court granted the motion.  Keller appeals.        
STANDARD OF REVIEW
In ruling on directed verdict or JNOV motions, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions.  Sabb v. South Carolina State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  The trial court must deny the motions when the evidence yields more than one inference or its inferences are in doubt.  Steinke v. South Carolina Dept of Labor, Licensing & Regulation, 336 S.C. 373, 386, 520 S.E.2d 142, 149 (1999). 
LAW/ANALYSIS
1.       Breach of Contract
Keller argues the trial court erred in granting a directed verdict on his claims for breach of contract in regard to the sale of stock.[2]  We disagree.
To recover under a breach of contract theory of liability, a plaintiff bears the burden of showing the existence of a contract, its breach, and damages resulting therefrom.  Fuller v. E. Fire & Cas. Ins., Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).  The necessary elements of a contract are an offer, acceptance, and valuable consideration. 
Carolina Amusement Co., Inc. v. Connecticut Natl Life Ins. Co., 313 S.C. 215, 220, 437 S.E.2d 122, 125 (Ct. App. 1993).  A valid offer identifies the bargained for exchange and creates a power of acceptance in the offeree. Id.
Keller admitted the contract that existed for the sale of stock was purely between himself and Harrell.  Keller testified he and Harrell negotiated the price, and RDLPW did not agree to anything in the contract.  The only involvement RDLPW had with regard to the agreement for the sale of stock was the vote taken at the shareholders meeting.  Truesdale, Gillespie, and Holden testified the shareholders voted unanimously to approve the transfer of shares from Harrell to Keller and to accept Keller as a new shareholder.  However, only Gillespie and Harrell signed the minutes of consent approving the sale, even though the document itself required the written approval of all the shareholders.[3]  Furthermore, Harrell, not RDLPW, owned the stock, and the shareholders vote to approve the transfer of the shares was insufficient to establish a contract between Keller and RDLPW.  Likewise, no contract existed between Keller and Galloway.  Galloway had no involvement in the contract between Harrell and Keller and was simply a shareholder of the corporation.  Therefore, we find the trial court did not err in directing a verdict on Kellers claim for breach of contract in regard to the sale of the stock.  
Keller next argues the trial court erred in granting a directed verdict on his claim for breach of contract in regard to his services.  We agree.
As noted above, the necessary elements of a contract are an offer, acceptance, and valuable consideration.  Id.  A valid offer identifies the bargained for exchange and creates a power of acceptance in the offeree.  Id. 
The evidence, viewed in the light most favorable to Keller, reflects that Keller offered to work for RDLPW to cut costs in exchange for $2,000 per month and to design and implement a personal training program for twenty-five percent of the profits generated.  The shareholders accepted the offer by unanimous vote, thereby forming a contract with Keller.  Gillespie, Truesdale, and Holden, testified they all agreed to the deal, and RDLPW made one payment of $2,000 to Keller for his services.  Based upon these facts, we find the trial court erred in granting the directed verdict with regard to Kellers claim for breach of the contract for his services.
2.       Equitable Causes of Action
Keller argues the trial court erred in granting a directed verdict on his equitable causes of action, including promissory estoppel and quantum meruit.  We agree as to the monetary claims only.
A cause of action for equitable estoppel is distinctly different from a cause of action for breach of contract.  Our courts recognize a remedy in equity if the claimant can prove: (1) the presence of a promise unambiguous in its terms; (2) reasonable reliance upon the promise by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise.  Satcher v. Satcher, 351 S.C. 477, 483-84, 570 S.E.2d 535, 538 (Ct. App. 2002).  The applicability of the doctrine depends on whether the refusal to apply it would be virtually to sanction the perpetration of a fraud or would result in other injustice.  Citizens Bank v. Gregorys Warehouse, Inc., 297 S.C. 151, 154, 375 S.E.2d 316, 318 (Ct. App. 1988).  Unlike a contract that requires a meeting of the minds and consideration, promissory estoppel looks at a promise, its subsequent effect on the promisee, and in certain cases bars the promisor from making an inconsistent disposition of the property involved.  Satcher, 351 S.C. at 484, 570 S.E.2d at 538-39.
Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value.  Columbia Wholesale Co., Inc. v. Scudder May N.V., 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994).
Although Keller did not present evidence whereby a jury could find the existence of a contract, he did present sufficient evidence under a promissory estoppel or quantum meruit theory to survive a directed verdict motion.  Three shareholders, Gillespie, Truesdale, and Holden, testified the shareholders agreed unanimously to pay Keller $2,000 per month and twenty-five percent of the personal training revenues he generated.  Keller reasonably relied on these promises and worked fifteen to thirty hours per week for the benefit of RDLPW, which was a foreseeable result of the promise.  Keller cut costs, managed the finances, and implemented a personal training program, but RDLPW paid him only $2,000 in return for his services.  
We hold Keller presented sufficient evidence yielding more than one inference on his claims based upon promissory estoppel and quantum meruit.  Therefore, we reverse the trial courts grant of a directed verdict on Kellers equitable causes of action as to his monetary claims only.  We find no error in the trial courts grant of a directed verdict as it relates to the transfer of stock.
3.       Breach of Contract Accompanied by a Fraudulent Act      
Keller argues the trial court erred in granting a directed verdict on his cause of action for breach of contract accompanied by a fraudulent act in regard to the sale of stock.  We disagree.
In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract, not merely to its making; and (3) a fraudulent act accompanying the breach. Harper v. Ethridge, 290 S.C. 112, 119, 348 S.E.2d 374, 378 (Ct. App. 1986). The fraudulent act is any act characterized by dishonesty in fact or unfair dealing.  Id.  Fraud, in this sense, assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence.  Conner v. City of Forest Acres, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002) (citation omitted).  Breach of contract accompanied by a fraudulent act is a cause of action ex contractu, or based upon a contract or promise; therefore, a contract must provide a basis for the claim.  Lister v. NationsBank of Delaware, N.A., 329 S.C. 133, 144, 494 S.E.2d 449, 455 (Ct. App. 1997).
Keller presented no evidence that could persuade a jury to conclude he had a contract for the sale of stock with RDLPW or Galloway.  Because the existence of a contract is a prerequisite to a cause of action for breach of contract accompanied by a fraudulent act, the trial court committed no error.
4.       Fraud[4]
Keller argues the trial court erred in granting a directed verdict on his cause of action for fraud in regard to the sale of stock.  We disagree. 
To prove fraud, a plaintiff must show:  (1) a representation; (2) its falsity; (3) its materiality; (4) the speakers knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearers ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.  Mutual Sav. & Loan Assn v. McKenzie, 274 S.C. 630, 633, 266 S.E.2d 423, 425 (1980).
Keller did not present sufficient evidence of the elements of fraud at trial.  Keller essentially contends that because the corporation voted to transfer Harrells stock to him, and the stock ended up in the hands of Galloway, fraud was necessarily committed.  Moreover, he argues that in reliance on the shareholders representation, he worked at the gym for seven months because he considered himself a shareholder of RDLPW.  Inasmuch as there were certain statutory requirements to effectuate the transfer of the stock, and Keller has neither shown that those requirements were satisfied nor how Galloway personally prevented the transfer of the shares, the fact that Galloway purchased the shares himself does not prove fraud. Accordingly, Keller offered insufficient proof of fraud, and the grant of the directed verdict in Galloways favor was proper.        
5.       Exclusion of Evidence
Finally, Keller contends the trial court erred in excluding the testimony of a witness regarding conversation(s) between shareholders or agents of RDLPW, which involved the avoidance of payment obligations to Mr. Keller because the witness could not recall the exact date the conversations occurred.  Because Keller made no proffer of the excluded evidence, we are precluded from considering this argument on appeal.  Alleged prejudicial error from the exclusion of evidence at trial is not demonstrated absent a proffer of that evidence at trial.  Greenville Memorial Auditorium v. Martin, 301 S.C. 242, 243, 391 S.E.2d 546, 547 (1990).
CONCLUSION
Keller presented no evidence that he had a contract for the sale of stock with Galloway or RDLPW.  Therefore, the trial court did not commit error in granting a directed verdict on that issue.  However, Keller did present sufficient evidence that he had a contract for services he rendered to the corporation.  Thus, we reverse the trial courts order as it relates to breach of contract for services rendered to RDLPW.  Further, Keller presented sufficient evidence to survive a directed verdict motion on his equitable claims of promissory estoppel and quantum meruit as against the corporation for the monetary damages he seeks but not as to the transfer of stock.  Moreover, Keller sought damages against Galloway only on his fraud claim but did not sufficiently support his claim of fraud.  Finally, we do not decide whether the trial court improperly excluded testimony of a witness because there was no proffer of the statement.  Therefore, the order of the trial court is 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HEARN, C.J., GOOLSBY, J., and CURETON, A.J., concur.

[1]        As best we can tell, RDLPW is a close corporation formed pursuant to section 33-18-101 to 500 of the South Carolina Code (1990).  Section 33-18-110 requires a shareholder who wishes to sell his stock to a non-shareholder to obtain the written consent of all shareholders or, pursuant to section 33-18-120, to first offer it to the corporation in writing. They may then approve the transfer by a vote of the holders of a majority of votes entitled to be cast . . ., excluding votes in respect of the shares covered by the offer.
[2]        In his brief, Keller asserts we should reverse the trial courts granting of a directed verdict on his cause of action for breach of the implied covenant of good faith and fair dealing.  However, he makes no arguments and cites no authority for his position.  Therefore, the issue is abandoned on appeal.  See First Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994); Stier, Kent & Canady, Inc. v. Jackson, 317 S.C. 179, 183, 452 S.E.2d 606, 609 (Ct. App. 1994).
[3]        It appears Keller elected to proceed under section 33-18-120(b)(3), which would have permitted the transfer of Harrells shares to him upon the written approval of all of the outstanding shares of the corporation.
[4] Kellers attorney conceded at oral argument that he was not claiming fraud against the corporation, but rather against Galloway only.