**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RED CARDINAL FIFTEEN,
INCORPORATED, a Delaware
Corporation; RED CARDINAL SIXTEEN,
INCORPORATED, a Delaware
Corporation; RED CARDINAL
SEVENTEEN, INCORPORATED, a
Delaware Corporation,
<u>Plaintiffs-Appellees,</u>

v.

WILLIAM W. LANGE; LFC REAL
ESTATE MARKETING SERVICES,
INCORPORATED, a California
Corporation,
<u>Defendants-Appellants,</u>

and

RICHARD CHANG,
<u>Defendant.</u>

No. 96-1066

RED CARDINAL FIFTEEN,
INCORPORATED, a Delaware
Corporation; RED CARDINAL SIXTEEN,
INCORPORATED, a Delaware
Corporation; RED CARDINAL
SEVENTEEN, INCORPORATED, a
Delaware Corporation,
Plaintiffs-Appellants,

v.

No. 96-1115

WILLIAM W. LANGE; LFC REAL
ESTATE MARKETING SERVICES,
INCORPORATED, a California
Corporation,
Defendants-Appellees,

and

RICHARD CHANG,
Defendant.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-93-906-3-17)

Argued: October 29, 1996

Decided: January 28, 1997

Before RUSSELL and ERVIN, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Michael Stephen Church, TURNER, PADGET, GRA-
HAM & LANEY, P.A., Columbia, South Carolina, for Appellants.
Edward A. Frazier, FINKEL, GOLDBERG, SHEFTMAN & ALT-
MAN, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:**
Curtis L. Ott, TURNER, PADGET, GRAHAM & LANEY, P.A.,
Columbia, South Carolina, for Appellants. Ronald A. Hightower,
Lexington, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The critical issue on this appeal is whether a real estate marketing
company's act of contriving a bogus bidding by a bogus bidder at an
auction sale caused compensable legal harm to its property-owner cli-
ent when the bogus bidder defaulted and the auction sale aborted. A
jury awarded damages to the property owner on alternative breach of
contract and breach of fiduciary duty claims. After the property owner
elected recovery under the breach of fiduciary award, the district
court, after granting a remittitur which reduced the jury award by the
amount of the marketing company's contractual commission, refused
to disturb the verdict further or to award prejudgment interest. On the
marketing company's appeal, we affirm. On the property owner's
cross-appeal, we vacate the remittitur and affirm the district court's
refusal to award prejudgment interest.

I.

In early 1991, Red Cardinal Fifteen, Inc., Red Cardinal Sixteen,
Inc., and Red Cardinal Seventeen, Inc. ("Red Cardinal") entered into
an agreement with LFC Real Estate Marketing Services, Inc. ("LFC")

under which LFC agreed to auction three beach-front lots and a house owned by Red Cardinal in Hilton Head, South Carolina. LFC and Red Cardinal together established the minimum bid prices for the lots: $2.4 million for the house and lot and $1 million each for the two adjacent undeveloped lots. Under the agreement, only registered bidders could bid at the auction. To become registered, a potential bidder had to complete a bidder registration form and present to LFC a cashier's check for $100,000 payable to herself or himself.

Having paid LFC $140,000 for expenses related to the auction, Red Cardinal became concerned when, as the scheduled auction date approached, LFC had not obtained any registered bidders. Approximately two weeks before the auction, Patrick Stanton, an employee of LFC, informed Red Cardinal that they had their first registered bidder--one Richard Chang. Stanton informed Red Cardinal that Chang was a wealthy resident of Hong Kong believed to be in the garment industry and that Chang had presented his cashier's check for $100,000 to Stanton. LFC advised Red Cardinal that this was the only information they had about Chang.

Four persons registered to bid at the auction, including Chang. The auctioneer started the bidding at prices above the agreed minimums, but lowered the minimum bid prices when bids were not forthcoming. Within a minute after the auctioneer lowered the minimum bid to the minimum amount agreed upon by the parties, Chang bid the minimum of $4.4 million total on the three lots. No one else bid higher on any of the lots. Chang therefore appeared to be the successful bidder on all three lots for the minimum bid of $4.4 million. At the conclusion of the auction, Chang refused to execute the sales documents or tender his deposit.

On April 23, 1991, the Tuesday after the auction, in a recorded telephone conference, William W. Lange, LFC's President, advised Red Cardinal and its former counsel that Chang and his attorney had contacted Lange and informed him that Chang "says he thinks he overpaid for the property and he has no further interest in it. And he tried to [inaudible] and the bottom line is he just would not--he just said I think I've overpaid for the property. I don't think it's worth what I paid for it and I have no further interest." Lange continued:

4

> I think this is Chinese mentality and that is, okay guys, it's your turn; although, I'm not sure where we are supposed to go now. We've been chasing this damn guy all over the country. He started out in Hilton Head, and we dealt with him yesterday in Miami, or he said he was in Miami. I presume that he was, although, he said Sunday he was going-- Saturday night he was going to Miami, and then he ended up spending the day in Hilton Head. So presumably, he was in Los Angeles today, but we don't even know that for sure.

In the telephone conference, Lange reiterated that Chang was a wealthy buyer:

> The bottom line is . . . I think he is absolutely capable. . . . He showed up with the prerequisite amount of money. . . . I think he was certainly capable. And no one spends three days, especially a big hitter, screwing around with some property unless he had a genuine interest. . . . And I think if we had it to do again, I would set Patrick in the audience and had him bid $2.5 million; Chang would have gone to $2.6, and we probably would have had a deal and signed it that night.

Lange and LFC tried to reassure Red Cardinal that they would do anything to get the sale to go through. Lange even said, "I mean, if we've got a substantial commission on the line, I'd be on a plane to Hong Kong tonight if I thought I could bring Mr. Chang back into this deal."

Lange and LFC recommended that Red Cardinal now attempt to sell the property by soliciting sealed bids. To prevent potential bidders from questioning the value of the property which was now potentially damaged, LFC concocted and put out a cover story that the first sale fell through only because Chang injected a contingency unacceptable to Red Cardinal. LFC ultimately procured a sealed-bid sale of the three lots for $3 million.

When Red Cardinal attempted to locate Chang, LFC and Lange said they could not provide Red Cardinal with any information, and only reluctantly provided the bidder registration card ostensibly filed

5

by Chang. The bidder registration form provided only minimum information about Chang: it represented that he lived in Hong Kong, that his banks were in Hong Kong, and that he had no social security number, driver's license, or telephone in the United States.

Red Cardinal eventually brought an action against LFC for breach of contract. (LFC I) As that action proceeded, LFC and Lange at all times denied having any knowledge of Chang other than the information provided in the registration form. LFC did not make any allegation in any pleading or discovery response that Chang had made a conditional bid or that he was not otherwise bound to the contract. Lange filed an affidavit in the action in which he swore that Chang was a resident of Hong Kong and that he was the successful bidder on each of the three parcels. The parties ultimately settled that action and exchanged releases, based upon LFC's representation that it did not have any relationship with Chang.

Red Cardinal finally located Chang where he was living in El Torito, California, brought the instant action against him claiming breach of contract, and moved for summary judgment. In support of a cross-motion for summary judgment, Chang submitted a new affidavit from Lange which contradicted Lange's prior sworn statements. Lange now swore, for the first time, that he "told Chang that if he would bid on the property his bid would be conditioned upon review and approval of the sales documentation."

This was not the only surprise. During discovery, Red Cardinal acquired information which disclosed that, if Lange's now-contradictory affidavit were believed, Chang had made only a conditional bid on the properties; that Lange had instructed his employees to avoid service of process; that Lange and LFC had falsely informed the district court and Red Cardinal that Chang was a wealthy businessman from Hong Kong when they knew he was a retired tailor living in El Torito, California; that Lange had concealed that he had known Chang personally since 1979; that Chang had worked for Lange as a translator; that Chang had known Lange's father, Clifford Lange, for 25 years or more; that Lange had financed Chang's trip to Hilton Head to bid on the property by paying for Chang's airplane tickets, hotel room, and rental car; that Lange and LFC had concealed that they knew Chang did not have the money to purchase the proper-

6

ties; that Chang did not complete the bidder registration form; that--through two companies Lange controlled--Lange had been making periodic and consistent payments totalling at least $40,000 to Chang at Chang's California address for several years; and that Lange and LFC had provided Red Cardinal with a fake bidder registration form for Chang.

Based on this information, Red Cardinal amended its complaint to add LFC and Lange as defendants. When the district court subsequently sanctioned Lange and LFC for taking inconsistent positions in the two cases by voiding the release and settlement agreement in the first action, Lange and LFC were required to withdraw the release as an affirmative defense to the instant action. J.A. 796-98.

The case proceeded to trial in September of 1995. As now structured, it contained claims, inter alia, against Chang for breach of contract and breach of contract accompanied by a fraudulent act, and claims against LFC and Lange for breach of contract, breach of contract accompanied by fraudulent act, and breach of fiduciary duty. The district court denied LFC and Lange's motion to require Red Cardinal at the outset of trial to elect between its various claims because of their inconsistencies. Following disclosure during the trial that Chang would not appear to defend and that LFC had obligated itself to indemnify Chang, the court did, however, require Red Cardinal to elect before submission of the case to the jury whether it would proceed only on its claims against Chang or only on those against LFC and Lange. Red Cardinal elected to drop its claims against Chang and proceed only on those against LFC and Lange. At the conclusion of the evidence, and following the abandonment by Red Cardinal of some of its remaining claims, the district court therefore submitted to the jury only Red Cardinal's claims against LFC for breach of contract and against LFC and Lange jointly for breach of fiduciary duty. The jury returned verdicts against LFC for $140,000 for breach of contract and against LFC and Lange jointly for $1.4 million for breach of fiduciary duty. Upon order of the court to elect, Red Cardinal chose to accept the award for breach of fiduciary duty.

The court then denied Lange and LFC's post-verdict motions for judgment as a matter of law and, alternatively, for a new trial; directly remitted the $1.4 million jury verdict by the net amount owed on

7

LFC's agreed real estate commission; and denied Red Cardinal's motion to amend the judgment to award pre-judgment interest.

LFC and Lange appealed the entry of judgment against them and Red Cardinal cross-appealed the district court's grant of remittitur and refusal to award pre-judgment interest.

II.

Lange and LFC assign three errors in challenging the judgment against them: (1) the district court's denial of their post-verdict motion for judgment as a matter of law; (2) the court's denial of their alternative motion for a new trial on the ground of error in admitting into evidence discovery materials from LFC I ; and (3) the court's refusal, on their motion, to require a pre-trial election by Red Cardinal between its several claims. We will take these in order.

A.

Lange and LFC contend that they were entitled to judgment as a matter of law because, rightly assessed, the evidence was insufficient to support a jury finding that their conduct caused any monetary loss to Red Cardinal. As they rightly point out, it is elementary that an essential element of this claim, as any, is that there be "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." Appellants' Br. 1 (citing Keeton et al, Prosser and Keeton on Torts§ 41, at 263 (5th ed. 1984)). And, as they also rightly point out, this means that proximate causation must be proved, which requires proof first of causation-in-fact: that "but for" the act or omission charged, the injury claimed would not have occurred. Keeton, supra,§ 41, at 265; Bramlette v. Charter-Medical-Columbia, 393 S.E.2d 914, 916 (S.C. 1990). Under that test, they say, the evidence did not suffice to prove causation-in-fact but instead showed the exact opposite: that what ultimately happened is exactly what would have happened had Lange and LFC not breached their fiduciary duty. This argument is based on their characterization of the fiduciary duty they breached as being narrowly only the duty to have timely disclosed to Red Cardinal their proposed use of the sham Chang bid.[1] So characterizing it, they point to testimony

_____

**1** Based on Lange's flat concession in trial testimony, the district court properly ruled as a matter of law that Lange and, through him, LFC,

8

by a Red Cardinal official that had this been disclosed to Red Cardinal before the auction, the property would have pulled from the auction. The argument then concludes that from this concession it is clear that had their fiduciary duty not been breached--that is, had they disclosed--the auction sale would not have taken place and Red Cardinal would have been in the same position, no better, no worse, than it was when the auction that <u>was</u> held was effectively aborted--made into a non-sale.

This argument might have at least some surface appeal if the fiduciary duty that is its premise had only been to disclose to Red Cardinal any questionable practices proposed for the auction sale in time for Red Cardinal to forbid them or to call off the sale. Certainly the duty included that of making timely disclosure of any such proposed scheme but, just as certainly, it was not limited to that obligation. The more fundamental duty deriving from the relationship was to conduct the sale, with or without prior disclosure, in a way not posing obvious risks to the business reputation of the owner and to the property's value. <u>See Landvest Assocs. v. Owens</u>, 274 S.E.2d 433 (S.C. 1981). The district court properly identified this as the fundamental duty owed and breached and on that basis properly concluded that the evidence was sufficient to prove that the breach of that broader duty caused a diminution of the property's market value in the tainted and limited buyer's market that resulted from the aborted auction. <u>Red Cardinal</u>, slip op. at 9, 10. As the district court put it in denying the post-verdict motion by LFC and Lange for judgment as a matter of law:

> Viewed in the light most favorable to the non-moving party, the evidence clearly supports the jury award in this case. . . . There are a number of ways the jury could have structured its fiduciary duty award. The most likely scenario, however, is as follows. The extensive prior dealings between Chang and LFC, coupled with the fact that LFC brought Chang to

_____

owed fiduciary duties to Red Cardinal. <u>Red Cardinal Fifteen, Inc., et al. v. Chang, et al.</u>, C/A No. 3:93-906-17, slip op. at 8, 9 (D.S.C. Dec. 6, 1995). The jury was submitted the issues of breach, loss, and amount of any resulting damages.

9

the sale could lead the jury to conclude that Chang was brought in as a "straw man" to pump up the bidding. The terms of the auction provided that the minimum sale price for all three lots was $4.4 million. Chang and three other bidders registered for the sale, fully aware of the minimum bid price. Chang, the straw man, then bid the minimum bid price once the bidding was open, thus scaring away the other three potential bidders. When none of the other three bidders topped Chang's minimum bid price, the auctioneer had no other choice but to strike the property down to Chang. Because Chang was LFC's straw man, LFC did not attempt to force him to go through with the sale but rather encouraged Red Cardinal to again market the property, this time on a sealed bid basis. In making this suggestion, Lange, on behalf of LFC, admitted that the aborted auction sale property probably damaged, or at least capped, the market value of the property. This led to Red Cardinal's reluctant decision to accept the $3 million that was offered at the subsequent sealed bid sale.

Id. at 10, 11.

We agree with that assessment and therefore find no error in the district court's denial of the post-verdict motion of LFC and Lange for judgment as a matter of law on Red Cardinal's breach of fiduciary claim.

B.

The second error assigned by LFC and Lange is put as follows: "The trial court erred in allowing [Red Cardinal] to present evidence of discovery responses served in a prior case over appellants' objection."[2]

_____

[2] We quote the issue verbatim as stated in appellants' brief to emphasize the limited basis upon which it challenges the district court's denial of their motion under Fed. R. Civ. P. 50(b) and 59(a) for a new trial in the alternative. That motion was broader in scope, including as another ground that the verdict was against the weight of the evidence on causa-

10

Appellants' argument, kept within the bounds established by the issue as framed in their brief, see Fed. R. App. P. 28(a)(3), apparently runs as follows. The court erred in allowing Red Cardinal to introduce into evidence various discovery responses made by Lange and LFC in LFC I that revealed the various misrepresentations that these parties had made to Red Cardinal respecting Chang's identity, economic status, and role as bidder in the auction sale. This evidence, they say, was not admissible as "impeachment or reply evidence" because it came in Red Cardinal's case-in-chief, nor was it admissible as substantive evidence because, if offered to prove misrepresentations, they were made after the ultimate sale of the property, hence after termination of any fiduciary relationship. Appellants' Br. 11-13. And, the argument runs, prejudice from this erroneously admitted evidence is demonstrated by the evident jury confusion in giving a jury award of $140,000 against LFC for breach of the marketing contract and an award of ten times that much against LFC and Lange for breach of fiduciary duty arising from that same contract. Id. at 8-11.

We need not reach the question whether any such prejudice as is posited did result from admission of this evidence, for there was no error in its admission.**3** As the record plainly indicates, it was not offered or admitted as impeachment or rebuttal evidence, but as substantive evidence. And, as such, it was clearly relevant, not to prove post hoc misrepresentations as appellants suggest, but to prove breach of the fiduciary duty of fair dealing with Red Cardinal. There is no question that statements made in a prior judicial proceeding are admissible as substantive evidence, assuming they are relevant and otherwise admissible. Fed. R. Evid. 801(d)(1); see also Fed. R. Evid. 801(d)(2) (admissions of a party opponent).

_____

tion and damages. That ground is not raised in the issue as presented on this appeal. See Fed. R. App. P. 28(a)(3). We observe, however, that the district court's assessment of the evidence on the causation and damages issues demonstrates that had this ground also been properly assigned as the basis of error, the assignment would have been without merit.
**3** Though not critical to our decision that the evidence was properly admitted, we note that to the extent there was any duplication in the breach of contract and breach of fiduciary duty awards, it was removed by the district court's requirement of an election.

11

C.

Lange and LFC's final claim of error is that the district court erred by not requiring Red Cardinal to elect between inconsistent causes of action and remedies prior to the presentation of evidence at trial. This was not error. As the district court explained:

> The court did not require this election until all of the evidence was in. Defendants contend that these "contradictory legal theories" were confusing to the jury and the court should have required the election prior to the start of trial.
>
> In the normal case, the court would have required an election prior to the commencement of the trial. This case, however, was far from the normal case. It was the defendants themselves who injected "contradictory legal theories" into this case by taking inconsistent positions during the history of this litigation. Moreover, Chang was somewhat equivocal regarding his relationship with LFC and Lange. As noted previously, Chang did not appear at trial. Chang's decision not to appear and LFC's agreement to indemnify Chang both came as a surprise to the court and, no doubt, to plaintiffs. Plaintiff, therefore, could not be certain what evidence at trial would show. LFC and Lange had taken contradictory positions; Chang was not at trial; and LFC and Lange were calling the shots.
>
> In view of the inconsistent positions the defendants had taken in the past and the surprise indemnification, plaintiff could not be faulted for continuing to advance alternative theories and presenting all evidence available to the jury. Plaintiffs elected their remedy prior to going to the jury and the court instructed the jury only on the causes of action relating to LFC and Lange.

Red Cardinal, slip op. at 7, 8. And, following the return of verdicts awarding damages on both of the alternative theories that were submitted to the jury, the district court avoided any duplication in the awards by requiring a final election between them.

12

All this was perfectly proper under the Federal Rules of Civil Procedure, which allow inconsistent claims to be pleaded, see Fed. R. Civ. P. 8(a), and under the general rule in the federal courts that election between inconsistent claims and duplicative remedies may, in the trial court's discretion, be deferred to and past submission to the jury and return of verdicts as circumstances warrant. See United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 991 (4th Cir. 1981); see generally 2A Moore's Federal Practice ¶ 8.32 (1992). South Carolina law, were the matter considered substantive, is to the same effect. Harper v. Etheridge, 348 S.E.2d 374, 379-80 (S.C. Ct. App. 1986).

Reviewing the district court's refusal to require pre-trial election here for abuse of discretion, we find none.

III.

We next consider Red Cardinal's cross-appeal in No. 96-1115 challenging the district court's remittitur of its verdict and refusal to award pre-judgment interest on its award. We take these in order.

A.

With their post-verdict motion for judgment as a matter of law, Lange and LFC also sought in the alternative a remittitur of the $1.4 million award to $110,000, the amount retained by them under the LFC I settlement agreement as real estate commission on the $3 million sealed-bid sale. Red Cardinal, slip op. at 9. This was based on their position that while they were entitled to judgment as a matter of law on the breach of fiduciary claim because no loss had been proved, the most, as a matter of law, that could be awarded for the breach was the commission they had received. They therefore did not seek remittitur on the basis of claimed excessiveness of the verdict by the usual device of a new trial on damages alone conditioned upon the plaintiff's refusal to remit to a specified amount, but for reduction by the court because of manifest error of law in the inclusion of specific items in the damage award. See generally Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil § 2815, at 159 (1995). The district court granted a direct remittitur on this basis, but not on the theory or in the specific amount sought by LFC and Lange. The court reasoned instead that because the jury award of $1.4 million reflected

13

a proper finding that the breach of fiduciary duty had caused Red Cardinal to lose a $4.4 millioin sale at the auction ($4.4 million less the $3 million received on the sealed bid sale), the award was overvalued by the amount of commission ($264,000) that Red Cardinal would have owed on a consummated auction sale. On this basis, the court directly remitted the $1.4 million award by that commission amount less the amount ($110,000) of the $180,000 commission earlier paid to LFC for the sealed bid sale and retained by it under the LFC settlement, resulting in a reduced judgment for $1,246,000.

Red Cardinal says simply that because LFC and Lange were found to have breached their fiduciary duty in relation to the auction sale, they should not be allowed to profit, as this remittitur effectively allows them to profit, from their wrongdoing. We agree with that position. The appropriate monetary remedy for a breach of fiduciary duty may include both compensatory damages reflecting the value of any resulting loss to the plaintiff, see Designer Showrooms, Inc. v. Kelley, 405 S.E.2d 417, 419 (S.C. Ct. App. 1991), and, in addition, a restitutionary award of any financial benefits realized by the wrong-doer. See generally 2 Dobbs, Law of Remedies§ 10.4, at 668 (2d ed. 1993). Here, though LFC was not actually paid a commission for conducting the aborted auction, the district court's remittitur has the effect of allowing it. Because this is directly at odds with the restitutionary principle that should apply in fixing monetary relief for this breach, we conclude that the remittitur should not have been ordered and must be vacated.**4**

B.

In South Carolina, as generally, pre-judgment interest may be awarded on amounts found payable from the time when, either by agreement or operation of law, payment was subject to demand, if the sum is certain or capable of being reduced to certainty, even if the amount is disputed by the parties. Brooklyn Bridge, Inc. v. South Carolina Ins. Co., 420 S.E.2d 511, 513 (S.C. Ct. App. 1992). In denying such an award here, the district court concluded that because of the

_____

**4** The ultimate result is to leave LFC with the $110,000 which, under the LFC I settlement, they were allowed to retain out of the $180,000 commission paid for negotiating the $3 million sealed-bid sale.

various legal theories and uncertainties present in this case, the amount in dispute could not be thought either certain or capable of being reduced to certainty. Red Cardinal, slip op. at 13, 14. Reviewing that ruling de novo, as one of law, we find no error.

IV.

In No. 96-1066, we affirm the district court's denial of Appellees' motion for judgment as a matter of law and, in the alternative, for a new trial. In No. 96-1115, we affirm the district court's refusal to award pre-judgment interest, but we vacate the court's remittitur and remand for entry of a judgment modified to reflect the vacatur.

SO ORDERED

15